LEHIGH D. GOSNEY, Appellant, *v.* ZARDA FROST, Appellee.

#### APPEAL FROM PERRY.

The purchaser of personal property is not to presume, by a vague statement made, that the vendor is a trifling fellow, and had not money, in the opinion of the person making the remark, to buy the property; that the title of the vendor is defective. A purchaser is not bound to take mere suspicions unsupported by facts, in his business affairs, as a warning; though the statement of facts touching the manner of the acquisition of property by his vendor, might be sufficient to put him on his guard.

ZARDA FROST, the appellee, who was the plaintiff in the court below, brought his action of trover against the appellant, who was defendant in the court below, for the recovery of the value of a horse, to which action the defendant in the court below filed his plea of not guilty. The cause was tried at the April term, 1860, of Perry Circuit Court, by a jury, JENKINS, Judge, presiding. A verdict was rendered in favor of the appellee for seventy dollars damages; a motion was entered by the appellant for a new trial; the motion was overruled, and judgment was rendered upon the verdict.

Gosney bought the horse at auction. Some conversation occurred at the time of the sale and afterwards, as to the ownership of the horse; which was sold as the property of one David Martin.

*James Martin* testified, that appellant told him that he had purchased the horse at auction, but had not then paid for him, that David Martin was the nephew of James, and that the horse had been purchased of appellee; and asked the advice of James Martin as to what he (appellant) should do; James Martin told him he had better keep his money in his pocket, that David Martin was a trifling fellow, and had not money enough to buy such a horse, and feared that he (David Martin) had got the horse dishonestly—that before appellant paid for the horse, he had better see Frost; that at this conversation David Martin came up, and offered to go with appellant and see Frost the next day, but could not go that day, as he (David) had to make a payment on the day in question, upon the purchase of a mill, for which purpose he had sold the horse; but that if appellant on the next day should not desire to keep the horse, he (David Martin) would take him back; that his only object in selling the horse was to raise money with which to pay for the mill.

There was much testimony as to the value of the horse. It did not appear by the evidence, that there was any suspicion, at the time of the sale, in regard to David Martin's title to the horse.

R. S. NELSON, for Appellant.

G. W. WALL, for Appellee.

CATON, C. J. Assuming, without determining, that the purchaser of personal property may be charged with constructive notice of a fraud, by which his vendor obtained the property, whenever there is sufficient to put him on inquiry the same as a purchaser of real estate, we are satisfied that the evidence in this case, does not show enough to charge the purchaser with such constructive notice. All the evidence there is, showing anything calculated to excite the suspicion of the purchaser, is in the testimony of James Martin. From this it appears that an uncle of the vendor, some hours after the horse was purchased and before the purchase money was paid, told the defendant, that the vendor had bought the horse of Frost, that he was a trifling fellow, and had not money enough to buy such a horse, and that he feared he came by him dishonestly, and advised him to keep his money till he had seen Frost. The auctioneer who sold the horse for the vendor, says he was present at the same conversation, and that subsequently, on the same day, the purchaser met the vendor and asked him to go and see Frost with him, to ascertain if all was right.

The vendor said he would go with him next day, but he had got to make a payment on a mill he had purchased in another county ; that he must raise the money that day and make the payment or forfeit the mill, and showed the contract of purchase to that effect. This explanation, the witness Lord says, convinced him that David Martin had a good title. And it seems to have allayed any suspicions which the statements of James Martin had excited in the mind of the purchaser, and he paid for the horse. Indeed, without this explanation, we do not think that the vague statements of James Martin, that David Martin was a trifling fellow and he did not believe he had money enough to buy such a horse, imposed the duty on Gosney to go and hunt up Frost, before paying for the horse. A purchaser should not be bound to take the mere suspicions, unsupported by facts stated, warranting such suspicion, and interrupt his regular business and run about the country to see if they are well or ill founded. If James Martin had told the purchaser that David Martin had acquired the horse fraudulently, or stated any facts inconsistent with the assumption that he had obtained him honestly, the case might have been different. But as it was, we think a reasonably cautious man might have completed the purchase by paying for the horse as the defendant did.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*